UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X   **Docket No.:**
WANDA WASHINGTON,

                                Plaintiff,

            -against-                          **COMPLAINT**

GILMAN MANAGEMENT CORP., ROBERT
RAPHAEL, LEE DEANE, and JOHN and JANE DOE
(said names being fictitious, the persons intended
being those who aided and abetted the unlawful        **JURY TRIAL REQUESTED**
conduct of the named Defendants),

                         Defendants.
------------------------------------------------------------------------X

Plaintiff, **WANDA WASHINGTON**, by her attorneys, **MADUEGBUNA COOPER, LLP**, for her complaint herein alleges:

## I.      THE NATURE OF THIS ACTION

1.      Due to discrimination and retaliation, Wanda Washington ("Washington" or "Plaintiff") was wrongfully terminated from her position as an administrative assistant with Gilman Management Corp., ("GILMAN") a real estate management company.

2.      Washington was for many years a loyal and productive employee of GILMAN.

3.      On or around October 3, 2018, Washington was unjustifiably terminated from GILMAN after complaining about discriminatory treatment, enduring years of being called an "angry black woman" and being treated worse than white employees.

4.      As a result, to remedy race and color discrimination and retaliation, Washington brings this action pursuant to 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a) ("Section 1981"), and the New York Human Rights Law, as contained in New York State Executive Law, § 296, *et seq.* ("NYSHRL").

## II.    JURISDICTION AND VENUE

5.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

6.    This Court has supplemental jurisdiction over the state causes of action pleaded.

7.    Venue is proper in this district under 28 U.S.C. § 1391(b) because the underlying events took place in this district.

## III.    PARTIES

8.    Washington is a Black female.

9.    Washington was continuously employed with GILMAN as an administrative assistant from 2000 until her unlawful termination on or around October 3, 2018.

10.    At all relevant times, Washington was a resident of Rockville Centre, Nassau County and the State of New York.

11.    Defendant GILMAN is a corporation organized under the laws of New York and located in Great Neck, New York, at 55 Water Mill Lane, Great Neck, New York 11021.

12.    GILMAN was founded as a real estate management company in 1945.

13.    The founder, Alvin Gilman, remained active in its operation until his retirement in 1993.

14.    GILMAN manages over 3,500 units in over 100 buildings in the New York City tri-state area, including shopping centers and office buildings.

15.    At all relevant times, Defendant RAPHAEL, was (and is) the Chief Operating Officer of GILMAN.

16.    RAPHAEL is a part-owner of GILMAN, as the third-generation of the Gilman Family, running the real estate management company.

17.    RAPHAEL is a white male.

18.    At all relevant times, Washington was supervised by RAPHAEL.

19.    At all relevant times, Defendant DEANE was (and is) a Managing Partner and part-owner of GILMAN.

20.    DEANE is a white MALE.

21.    At all relevant times, RAPHAEL and DEANE, aided by others at GILMAN, discriminated against Washington on the basis of her race and color, and retaliated against her for complaining about discrimination.

22.    At all relevant times, RAPHAEL and DEANE had the authority to hire, fire and promote employees, and had final decision-making authority for all personnel actions.

23.    At all relevant times, Defendants were responsible for ensuring that employees are not subjected to discriminatory treatment and/or retaliation for engaging in protected activity.

## IV.    FACTS COMMON TO ALL CAUSES OF ACTION

*Washington's Background and Employment History:*

24.    Washington was raised and attended high school in Brooklyn, New York.

25.    In or around 2000, Washington began her employment with GILMAN when RAPHAEL's uncle, Jeffrey Gilman, hired her as a receptionist.

26.    Over the years, Washington's duties increased from receptionist to administrative assistant and then into an additional role of liaison between tenants and property managers.

27.    In her role of administrative assistant and liaison, Washington processed rent payments and leases, government housing subsidies, and worked with property managers to field tenant complaints and concerns.

28.    Before her termination, Washington never received complaints about her work or performance at GILMAN and had no disciplinary issues.

*Washington Suffers Discrimination and a Hostile Work Environment*:

29.     During her employment at GILMAN, Washington was subjected to discrimination and a racially hostile work environment from the beginning of her employment.

30.     Before her unlawful termination, Washington was called an "angry black woman" by DEANE on multiple occasions from in or about 2007 until she was terminated in October 2018.

31.     Within two weeks before she was fired after opposing discrimination, DEANE called her an "angry black woman."

32.     In addition, DEANE made a paper "stress meter" and attached it on the side of Washington's cubicle in or about 2010. DEANE made a second one after Washington threw the first one away.

33.     While mocking Washington as an "angry black woman" and saying that everyone knows she is "just an angry black woman," DEANE, to amuse himself, would move the "stress meter" dial to humiliate Washington in front of her co-workers while claiming her stress was off the charts.

34.     Additionally, RAPHAEL routinely cursed at Washington and other women of color in the office.

35.     The women of color in the office were also required to use their own vehicles and gas for company work with no reimbursement.

36.     Washington went to the post office and bank frequently for company business, and was never reimbursed for gas, car maintenance or parking meters.

37.     Washington was even required to babysit RAPHEAL's mother's dog.

38.     In comparison, white employees in management positions subject to the same work rules and employment conditions who reported to RAPHEAL and DEANE were not required to use their own resources to conduct business for GILMAN.

39.     Instead, the white employees had the use of leased cars, credit cards, and were rewarded with professional sports tickets, like the Knicks and Mets.

40.     In or around August 2018, RAPHAEL ordered Washington to move out of her GILMAN apartment, where she was paying below market rent, and find a new place to live.

41.     RAPHAEL claimed that GILMAN's bottom line was hurting and they needed to rent the apartment for full market-value.

42.     However, white superintendents and property managers that reported directly to RAPHAEL continued to receive the benefit of free or below market-value rentals from GILMAN.

43.     Washington, as a black woman, was the first employee to lose her apartment.

44.     In response to her complaints about losing her apartment, RAPHAEL suggested that she could live in an illegal basement apartment that was in disrepair for free because "that was good enough for her."

45.     Washington viewed the offer as a cruel joke and further evidence of RAPHAEL's discriminatory animus.

*Washington Complains of Discrimination*:

46.     On or around August 21, 2018, unable to tolerate these work conditions, Washington complained about RAPHAEL's prejudicial treatment based on her race and gender in an email to GILMAN's office manager, Donna D'Addario, a white female.

47.     On or around August 23, 2018, Washington sent the same email to DEANE, complaining that her treatment was based on her race and gender.

48.    On or around September 29, 2018, Washington voiced frustrations to RAPHAEL in an email discussing her pay rate, insurance premiums and how women in the office had to pay a higher share of the premiums, and having to use her personal car and gas for company business.

49.    Afterward, RAPHAEL directed Washington to delete her email to him.

50.    On or around October 2, 2018, Washington complained about racial discrimination in an email to DEANE.

*Washington is Terminated in Retaliation*:

51.    On or around October 3, 2018, during a conversation about her negative work conditions and increased insurance premiums, RAPHAEL told Washington to quit if she had a problem with her treatment.

52.    Washington responded that if she was not black and female, RAPHAEL would not be treating her negatively.

53.    In response, RAPHAEL terminated WASHINGTON on the spot, saying, "get the fuck out. You're terminated."

54.    Washington was left with no job and no apartment, forcing her to move in with her daughter.

*Washington Sustains Significant Loss and Damages*:

55.    As a proximate result of Defendants' discriminatory conduct, Washington suffered and continues to suffer monetary loss and damages, including the loss of past and future earnings, and other employment benefits.

56.    As a result of Defendants' discriminatory and retaliatory treatment, Washington has been out of work and faces considerable debt.

57.     As a further proximate result of Defendants' actions, Washington experienced anxiety, elevated stress levels, severe emotional distress, lasting embarrassment, humiliation and anguish, as well as other incidental and consequential damages and expenses.

58.     Defendants' conduct was outrageous and malicious, intended to injure Washington, and carried out with reckless indifference to her protected civil rights, thereby entitling her to punitive damages.

59.     Washington has no complete, plain, clear or adequate remedy at law.

## FIRST COUNT AGAINST ALL DEFENDANTS
### (Race and Color Discrimination under Section 1981)

60.     Washington repeats and realleges each allegation in each numbered paragraph above.

61.     Defendants subjected Washington to differential terms and conditions of employment because of her race and color.

62.     Defendants took all the foregoing actions to deprive Washington of employment and other contractual opportunities on account of her race and color.

63.     Because of Defendants' willful and deliberate actions, and as a proximate cause, Washington has been denied her right to equal employment opportunity in violation of Section 1981.

64.     By reason of the above, Washington has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## SECOND COUNT AGAINST ALL DEFENDANTS
### (Retaliation under Section 1981)

65.     Washington repeats and realleges each allegation in each numbered paragraph above.

66.    Defendants' conduct was retaliation for Washington's complaints of discrimination on the basis of race and color, and violated her rights under Section 1981.

67.    By reason of the above, Washington suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

### THIRD COUNT AGAINST ALL DEFENDANTS
**(Race and Color Discrimination in Violation of the NYSHRL)**

68.    Washington repeats and realleges each allegation in each numbered paragraph above.

69.    At all relevant times, Washington was an "employee" under the NYSHRL.

70.    At all relevant times, Defendants were "employers" under the NYSHRL.

71.    By adversely affecting the terms, conditions and privileges of Washington's employment because of her race and color, Defendants violated the NYSHRL.

72.    By reason of the above, Washington suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

### FOURTH COUNT AGAINST ALL DEFENDANTS
**(Retaliation in Violation of NYSHRL)**

73.    Washington repeats and realleges each allegation in each numbered paragraph above.

74.    Defendants' above conduct was retaliation for Washington's complaints of discrimination and violated her rights under the NYSHRL.

75.    By reason of the above, Washington has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**FIFTH COUNT AGAINST ALL DEFENDANTS**
**(Hostile Work Environment in Violation of Section 1981)**

76. Washington repeats and realleges each allegation in each numbered paragraph above.

77. On account of her race and color, Defendants subjected Washington to a pattern of harassment which unreasonably interfered with her work performance and created an intimidating, hostile or offensive work environment that seriously affected her psychological well-being.

78. Defendants' above conduct was unlawful and violated Washington's contractual rights under Section 1981.

79. By reason of the foregoing, Washington suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**SIXTH COUNT AGAINST ALL DEFENDANTS**
**(Hostile Work Environment in Violation of NYSHRL)**

80. Washington repeats and realleges each allegation in each numbered paragraph above.

81. On account of her race and color, Defendants subjected Washington to a pattern of harassment which unreasonably interfered with her work performance and created an intimidating, hostile or offensive work environment that seriously affected her psychological well-being.

82. Defendants' above conduct was unlawful and violated Washington's rights under the NYSHRL.

83. By reason of the foregoing, Washington suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## PUNITIVE DAMAGES

84.     Washington claims punitive damages by reason of the wanton, unrepentant, reckless and egregious conduct of the Defendants alleged.

**WHEREFORE,** Washington prays that this Court grant her judgment containing the following relief:

a.      Impanel a jury to hear her claims;

b.      Grant Washington equitable relief, including but not limited to reinstatement;

c.      Establish an imposed oversight and monitoring of the activities of Defendants to prevent future retaliation;

d.      Establish a mechanism to enforce injunctions by requiring Defendants to present to the Court within 30 days of the issuance of the injunction, a plan showing how they will comply with the Court's order and that they cease and desist from policies, practices, customs and usages of discrimination against other persons similarly situated with Washington;

e.      An award of damages in an amount to be determined upon the trial of this matter to compensate Washington for her monetary loss and damages, including Washington's loss of past and future earnings, bonuses, compensation, and other employment benefits;

f.      An award of damages to compensate Washington for mental anguish, humiliation, embarrassment, and emotional injury for each cause of action;

g.      An award of damages in an amount to be determined upon the trial of this matter to compensate Washington for violations of her rights under Section 1981 and the NYSHRL;

h.      An award of punitive damages to be determined at the time of trial for the claims

pursuant to Section 1981 and the NYSHRL;

i.      An award of reasonable attorney's fees and costs related to Washington's claims

pursuant to 42 U.S.C. § 1988 and the NYSHRL; and

j.      Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       November 9, 2020

Respectfully Submitted,

_____
SAMUEL O. MADUEGBUNA, ESQ.
**MADUEGBUNA COOPER LLP**
Attorneys for Plaintiff,
WANDA WASHINGTON
30 Wall Street, 8th Floor
New York, NY 10005
(212) 232-0155


TO:    GILMAN MANAGEMENT CORP.
       55 Water Mill Lane
       Great Neck, NY 11021

       ROBERT RAPHAEL
       C/O GILMAN MANAGEMENT CORP.
       55 Water Mill Lane
       Great Neck, NY 11021

       LEE DEANE
       C/O GILMAN MANAGEMENT CORP.
       55 Water Mill Lane
       Great Neck, NY 11021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                              Docket No.:
-------------------------------------------------------------------------------------------------------------
WANDA WASHINGTON,

                                        Plaintiff,

            -against-

GILMAN MANAGEMENT CORP., ROBERT RAPHAEL, LEE DEANE, and JOHN and
JANE DOE (said names being fictitious, the persons intended being those who aided and abetted
the unlawful conduct of the named Defendants),

                                        Defendants.
-------------------------------------------------------------------------------------------------------------

COMPLAINT AND JURY DEMAND

-------------------------------------------------------------------------------------------------------------
Signature (Rule 130-1.1-a)

_____

Print name beneath
SAMUEL O. MADUEGBUNA, ESQ.

_____


Yours, etc.


MADUEGBUNA COOPER LLP
Attorneys for Plaintiff
30 Wall Street, 8th Floor
New York, New York 10005
(212) 232- 0155


To: All Counsel of Record
_____
Service of the within is hereby admitted on

_____

Attorneys for

- 12 -